In the Matter of the Appraisal of the Estate of CHARLES K. COLE, Deceased, under the Acts in Relation to Taxable Transfers of Property.

STATE TAX DEPARTMENT OF THE STATE OF NEW YORK, Appellant; ROBERT A. SHAW and Others, as Executors, etc., of CHARLES K. COLE, Deceased, Respondents.

Second Department, July 21, 1922.

**Taxation — transfer tax — trust created by testator prior to death for benefit of son with power of appointment in case son survived testator — trust created to induce son to enter testator's business — life estate not given in contemplation of death and not taxable — son survived testator — remainder under said trust not taxable — will created trust with power of appointment and provided that on failure of appointment remainder should go to issue or next of kin — remainder presently taxable.**

A trust created by a testator during his life for the benefit of his son, which conferred the power of appointment as to the remainder upon the son in case he survived the testator, was not a gift or transfer in contemplation of death and subject to the transfer tax, but was a valid agreement enforcible by the son and based upon a good and valuable consideration, where it appears that shortly before the agreement was entered into the son was a physician practicing in Montana; that the testator was anxious to have his son enter into business with him in New York city; that he created the trust for the purpose of inducing his son to give up his profession and to enter into said business, and that the son gave up a profitable business in Montana and entered into his father's business.

Since the son survived the father neither the life estate nor the remainder under the trust agreement is taxable.

Under a trust created by testator's will which gave the beneficiaries the power of appointment and provided that in case said power was not exercised the remainders should go to the issue of the beneficiaries and in case there were no issue then to the next of kin, the remainders became vested in the next of kin of the beneficiaries subject to the beneficiaries having issue and subject to the exercise of the power of appointment and such vested rights are taxable by temporary order.

APPEAL by the State Tax Department of the State of New York from an order of the Surrogate's Court of the county of Dutchess, entered in the office of said surrogate on the 23d day of December, 1921, modifying a prior order fixing the transfer tax, by exempting from tax certain property embraced in a trust fund and declaring certain remainders created by the will of Charles K. Cole not presently taxable.

*Schuyler C. Carlton* [*W. E. Hoysradt* with him on the brief], for the appellant.

*Frank M. Avery* [*Earl A. Darr* with him on the brief], for the respondents.

RICH, J.:

The testator died on February 27, 1920, leaving a last will and testament which has been admitted to probate in Dutchess county. Prior to his death the testator entered into certain trust agreements with his son, Philip Gillett Cole, dated respectively May 22, 1917, and February 2, 1920. The original trust agreement between testator and his son provides for a life estate to the latter, but the right of revocation upon one year's notice was reserved to the settlor. The second agreement, entered into on February 2, 1920, provided for the elimination of paragraph 10 of the first agreement, made the trust absolute, and also provided for a power of appointment over the remainder to Philip Gillett Cole, provided he survived his father. The first agreement, paragraph 7 thereof, provided that if Philip Gillett Cole should predecease the testator, or in case of the revocation by testator, the property, the subject of the trust, should revert to his (testator's) estate. By the agreement of February 2, 1920, in place of paragraph 6, a provision was substituted providing for a life estate to Philip Gillett Cole, and upon his death, provided he survives the testator, a power of appointment over the remainder. In place of paragraph 8 of the original agreement, which was eliminated, provisions for the appointment of successor trustees, in the event of testator's death, were made.

The testator's will, among other things, provided as follows: " to hold the same in trust and to receive the net income of said trust and to pay over the net income thereof to my said daughter Virginia Garber Cole, for and during her natural life, and upon the death of my said daughter Virginia Garber Cole to deliver and pay over the principal of said trust unto such persons and corporations, and in such shares, interests and proportions as she shall in and by her last will and testament in that behalf appoint, and in case she shall leave no such valid appointment, then to her issue surviving her according to their stocks, and in case no issue surviving her, then to her next of kin surviving her according to their stocks." The residuary estate was bequeathed to trustees in trust, to pay the net income " to my son Philip Gillett Cole for and during his natural life, and upon the death of my said son Philip Gillett Cole, to deliver and pay over the principal of said trust unto such persons and corporations, and in such shares, interests and proportions as he shall in and by his last will and testament in that behalf appoint and in case he shall leave no such valid appointment, then to his issue surviving him according to their stocks."

It is the contention of the appellant: (1) That the language of the will renders taxable in this proceeding the remainders of the trust fund over which Virginia Garber Cole and Philip Gillett

Cole are vested with powers of appointment; (2) that the language of the trust agreements renders now taxable in this proceeding the life estate of Philip Gillett Cole in the trust fund, because the trust agreement was a transfer intended to take effect in possession or enjoyment at or after death, as the trust agreements provide *that in case the son should predecease the father all of the trust property should revert to the latter;* (3) that the remainder of the trust under the trust agreements, after the termination of the life estate of Philip Gillett Cole, and over which he has a power of appointment, is taxable because there was no completed gift of this remainder *until the son survived the father,* and that, therefore, the transfer of this remainder by the trust agreements was a transfer intended to take effect in possession or enjoyment at or after death.

As to the last two contentions of the appellant, the learned acting surrogate has held that the trust agreement was not a bounty or benefaction, but rested upon a mutual consideration, was enforcible by the son, and as such, not within the contemplation of the act relating to taxable transfers. In reference to the first two contentions of the appellant he has held that it is the *exercise* of a power of appointment, and not the *creation* of a power which effects the transfer which the statute makes taxable, and that, therefore, the remainders under these trust funds are not presently taxable until the exercise of the power.

In reference to the trust agreement, it seems to be the contention of the appellant that there is no consideration shown therefor and that the situation after the first, and even after the second agreement, was really a tentative trust, not unlike that exemplified by *Matter of Totten* (179 N. Y. 112), the familiar savings bank trust. The circumstances surrounding the execution of this agreement, however, indicate that the trust agreements were the result of some sort of an understanding between father and son. It seems that the testator was the owner of about 2,200 shares of stock in the corporation known as A. Schrader's Son, Inc. In 1912 or 1913 testator and his wife became estranged and he expressed a desire to have his son, who resided in Montana, come to live with him and to help him in the business of the company, of which he was substantially the owner. It seems that testator's son had spent one year in the employ of the Schrader Company, but as he did not like the business and desired to study medicine he left, and after his graduation went to Montana where he practiced medicine until the spring of 1917, when he received a telegram from his father to come to New York. It is shown that as a result of his visit, testator proposed to transfer half of his interest in the Schrader Company to the son, if the latter would give up

the practice of medicine, return to New York and re-enter the business. The son says he agreed to do this, and that at that time (May 22, 1917) the original trust agreement was executed. He later served as a surgeon in France, from which he returned in April, 1919, at which time the testator agreed to arrange for a permanent trust, but in the meantime desired to be assured that he, the son, would go into the business and stay there. He says after his return from France he went to Montana, closed up his office, disposed of his possessions, returned to New York after his marriage and entered actively into the business of A. Schrader's Son, Inc., in July, 1919, since which time he has been acting as director and vice-president of the company. He says that thereafter, and on February 2, 1920, the instrument making the trust permanent was executed. He also says that he has not since practiced medicine and at the time he closed up his affairs in Montana he was earning something around $8,000 a year. He says he also had some difficulty in persuading his wife, whose home was in Montana, to live in New York.

Since the decision in *Hamer* v. *Sidway* (124 N. Y. 538) it has uniformly been held that the giving up of a legal right at the request of another party is a sufficient consideration for the promise made to him. The son had a right to live in Montana, and to practice medicine, his chosen profession. Those rights he abandoned upon the strength of the testator's promise embodied in the trust agreement, that for such forbearance he would provide for him a certain income, and further provided that he might dispose of the remainder of said trust as he (the son) in his last will and testament might appoint. As the court said in *Hamer* v. *Sidway* (*supra*), we need not speculate on the effort which may have been required to give up these rights; it is sufficient that he restricted his lawful freedom of action within certain prescribed limits upon the faith of his father's agreement, and now having fully performed the conditions imposed, it is of no moment whether such performance actually proved a benefit to the promisor, his father, but were it a proper subject of inquiry, there is nothing in this record that would permit a determination that the testator was not benefited in a legal sense.

I am, therefore, of the opinion that the life estate provided to the son in the trust agreements was not a gift or transfer in contemplation of death, but was a valid agreement, enforcible by the son and based upon a good and valuable consideration. Appellant cites *Matter of Orvis* (223 N. Y. 1). The agreement in the *Orvis* case indicates that it was an instrument of transfer intended to take effect in ownership, possession and enjoyment at the death

of the transferor. The agreement was made between two partners, by the terms of which two funds were established within the capital and accumulated profits of the firm; it was provided that the survivor should be the owner of the interest of the deceased in those funds. That case can hardly be paralleled with the situation in the instant case. The transfer in the instant case of the life estate took effect immediately. Whatever right the son acquired in the trust fund he acquired at the moment of the delivery of the agreement — there was no postponement of the enjoyment of the life estate until the death of testator. (*New York Life Ins. & T. Co.* v. *Cary*, 191 N. Y. 33, 38, 39.)

The remainder under the trust agreement I am of the opinion is not taxable for the same reason. It is the contention of the appellant, however, that because the trust agreement might have terminated by the death of the son prior to that of his father, such fact raises a contingency which makes the power of appointment under the trust taxable. Some point is also made of the fact that there was no complete gift of the remainder when the son had to survive the father to possess even a power to bequeath. The gift, for the reasons above stated, was not a gift to take effect in contemplation of death. The reversion of the property to the father was dependent upon the son's death — the object of the statute is to tax transfers depending upon the death of the grantor or donor. A complete answer to the contentions advanced is that the son survived the father and under these circumstances neither the life estate nor the remainder is taxable. (*Matter of Wing*, N. Y. L. J. Nov. 9, 1921; *Matter of Bowers*, 195 App. Div. 548; affd., 231 N. Y. 613; *Matter of Masury*, 28 App. Div. 580; affd., 159 N. Y. 532.)

In reference to the remainders under the testator's will the contention of appellant is that under section 41 of the Real Property Law (made applicable to personal property by section 11 of the Personal Property Law), which provides that " *the existence of an unexecuted power of appointment does not prevent the vesting of a future estate, limited in default of the execution of the power,*" the remainders are now vested in the next of kin of Virginia Garber Cole and Philip Gillett Cole, subject to their having issue and subject to the exercise of the powers of appointment, and that, therefore, there is a condition whereby the now vested rights of their next of kin may be defeated, rendering such vested rights now taxable by temporary order. The determination of the question presented, respondents contend, depends upon the construction to be accorded subdivision 6 of section 220 of the Tax Law (as amd. by Laws of 1916, chap. 323, and Laws of 1919, chap.

626)* and section 230 of the Tax Law (as amd. by Laws of 1916, chap. 550).* The language of the former section seems to provide for the exemption from taxation in the estate of the settlor of non-contingent absolute powers of appointment, whereas the latter, read in connection with section 41 of the Real Property Law (which is made applicable to personal property by section 11 of the Personal Property Law) certainly indicates an intent to tax remainders in the estate of the settlor, under a temporary order, where the estate vests, subject to being divested by contingencies.

Respondent seeks to sustain that portion of the order appealed from relating to the present taxability of the remainders, by the decisions in *Matter of Howe* (86 App. Div. 286; affd., 176 N. Y. 570) and *Matter of Burgess* (204 id. 265), while it is urged by the appellant under the amendments to the Tax Law (§§ 230, 241) made by chapter 800 of the Laws of 1911† and the recent decisions of the Court of Appeals (*Matter of Zborowski*, 213 N. Y. 109; *Matter of Howe, supra*), which held that taxation should be suspended where the power given was absolute (*Matter of Trumbull*, 117 Misc. Rep. 812; *Matter of Andrew B. Parker*, N. Y. L. J. Dec. 7, 1921, p. 825), that it is entirely possible that the powers of appointment will not be exercised and that the taxation will, therefore, ultimately be assessed against the donor's estate. (*Matter of Canda*, 114 Misc. Rep. 161; 197 App. Div. 597.) The decision in *Matter of Howe* seems to indicate that it is based upon the ground that section 230 did not by implication repeal subdivision 6 of section 220 of the Tax Law, but the conclusion reached by the Court of Appeals in *Matter of James V. Parker* (226 N. Y. 260) indicates that it was the intention of the Legislature to provide for the present taxation of remainders limited upon conditions and contingencies. I am, therefore, of the opinion that the surrogate erred in failing to provide for the present taxation of the remainders limited upon the default in the exercise of the powers, and of issue, and that the order should be modified so as to provide that these remainders are presently taxable, and as modified affirmed, without costs.

BLACKMAR, P. J., KELLY, JAYCOX and YOUNG, JJ., concur.

Order of the Surrogate's Court of Dutchess county modified in accordance with opinion, and as modified affirmed, without costs. Settle order on notice.

---

* Since respectively amd. by Laws of 1922, chap. 430, and Laws of 1921, chap. 476.— [REP.

† Since amd. by Laws of 1921, chap. 476, and § 230 by Laws of 1916, chap. 550.— [REP.